**Joan GRIM and Steven Grim, parents of a disabled child, Chelsea, Plaintiffs–Appellees,**

v.

**RHINEBECK CENTRAL SCHOOL DISTRICT, Defendant–Appellant.**

No. 02–7483.

United States Court of Appeals, Second Circuit.

Sept. 9, 2003.

Mark C. Rushfield (Michael K. Lambert, on the brief), Shaw & Perelson, LLP, Poughkeepsie, NY, for Appellant.

RosaLee Charpentier, Family Advocates, Inc., Kingston, NY, for Appellees.

PRESENT: LEVAL, CABRANES, Circuit Judges, and AMON,* District Judge.

## SUMMARY ORDER

Defendants appeal from the District Court's award of $51,603.13 in private-school tuition reimbursement to plaintiffs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The District Court held that the individualized education programs proposed by the defendant school district for the education of the plaintiffs' daughter were insufficient to provide the student with a "free appropriate public education" as required by the IDEA. In so holding, the District Court reversed decisions denying reimbursement rendered by two Impartial

Hearing Officers ("IHOs") and affirmed by a State Review Officer ("SRO") of the New York State Education Department.

Having reviewed the record before the District Court, we reverse the judgment of the District Court and enter judgment affirming the administrative determinations of the New York State Education Department.

## BACKGROUND

### I. The IDEA

The IDEA offers federal funds to states that develop plans to assure "all children with disabilities" a "free appropriate public education," 20 U.S.C. § 1412(a)(1)(A). To meet the requirements of the IDEA, each student with a disability must receive "special education and related services" designed to serve his needs. *Id.* § 1401(8). Such services must the administered according to an "individualized education program" ("IEP"), which school districts must implement each year for each student with a disability. *Id.* § 1414(d).

IEPs are subject to considerable procedural and substantive requirements, *id.*, but they are not required to "furnish[ ] . . . every special service necessary to maximize each handicapped child's potential," *Board of Education v. Rowley,* 458 U.S. 176, 200, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Rather, the IDEA requires that IEPs provide a "basic floor of opportunity," consisting of services that are "individually designed to provide educational benefit" to a child with a disability. *Id.* at 201, 102 S.Ct. 3034.

The IDEA further imposes on school districts developing IEPs a strong preference for "mainstreaming," or educating children with disabilities "[t]o the maxi-

---

* The Honorable Carol B. Amon, of the United States District Court for the Eastern District of New York, sitting by designation.

mum extent appropriate" along with their non-disabled peers. 20 U.S.C. § 1412(a)(5). This Court has interpreted this provision as a requirement that special education be provided in the "least restrictive setting consistent with a child's needs." *Walczak v. Florida Union Free School District,* 142 F.3d 119, 122 (2d Cir. 1998).

New York parents who believe an IEP is insufficient under the IDEA may challenge it in an "impartial due process hearing," 20 U.S.C. § 1415(f), before an IHO appointed by the local board of education. *See* N.Y. Educ. L. § 4404(1). At that hearing, the school district has the burden of demonstrating the appropriateness of its proposed IEP. *See, e.g., Walczak,* 142 F.3d at 122 (collecting cases). The decision of an IHO may be appealed to an SRO, *see* N.Y. Educ. L. § 4404(2); *see also* 20 U.S.C. § 1415(g), and that officer's decision may in turn be challenged in either state or federal court, *see* 20 U.S.C. § 1415(i)(2)(A).

## II. Facts and Procedural History

Plaintiffs–Appellees Steven and Joan Grim enrolled their daughter, Chelsea, in Defendant–Appellant Rhinebeck Central School District for first and second grades. Toward the end of her second-grade year, Chelsea was tested at her parents' request and classified as "learning disabled." Accordingly, the school district developed an IEP outlining a program of special education for her. Chelsea began receiving instruction pursuant to the IEP during the final month of her second-grade year, June 1995.

During the following summer, the Grims concluded that the IEP was insufficient for Chelsea's needs, so they unilaterally removed her from the Rhinebeck public schools and enrolled her in the private Kildonan School ("Kildonan"), which spe-

cializes in the education of dyslexic students. Kildonan educates according to the Orton–Gillingham method, "a language based remedial program for students who have specific difficulties in the phonological encoding and decoding of the language." *See Grim v. Rhinebeck Central School District,* No. 98 Civ. 4854, slip op. at 20–21 (S.D.N.Y. Mar. 29, 2002) (citation omitted).

Near the conclusion of Chelsea's third-grade year at Kildonan, the Grims formally challenged the adequacy of the IEP that had been developed the previous spring ("1995–96 IEP") by requesting an impartial hearing before an IHO, as authorized by the IDEA. They sought reimbursement from the Rhinebeck Central School District for the expense of sending Chelsea to Kildonan. After hearing extensive testimony, on March 14, 1997, the IHO issued a determination that the 1995–96 IEP was appropriate and legally sufficient under the IDEA, and further, that Kildonan was not an appropriate placement for Chelsea because of the IDEA's preference for educating students in the "least restrictive environment." An SRO affirmed the IHO's decision on March 10, 1998.

In the summer of 1996, defendant school district again prepared an IEP to guide the provision of special education to Chelsea during her approaching fourth-grade year ("1996–97 IEP"), as required by the IDEA. Deeming the 1996–97 IEP insufficient to meet Chelsea's needs, the Grims enrolled Chelsea in Kildonan for a second year. They later deemed defendant's proposed IEP for Chelsea for her fifth-grade year ("1997–98 IEP") similarly insufficient, so Chelsea remained at Kildonan for a third year.

Plaintiffs' subsequent challenges to the sufficiency of the 1996–97 and 1997–98 IEPs were consolidated before a single IHO. The IHO held that both IEPs "offered an appropriate public education in

the least restrictive environment," *id.* at 55, and that the procedures followed in their development adequately complied with the IDEA, *id.* An SRO affirmed the decisions of the IHO. *Id.*

## DISCUSSION

### I. Judicial Review Under the IDEA

Federal courts reviewing administrative determinations under the IDEA must base their decisions on "a preponderance of the evidence," taking into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties. *See* 20 U.S.C. § 1415(i)(2)(B). The Supreme Court and our Court have interpreted the IDEA as strictly limiting judicial review of state administrative decisions. *See Rowley,* 458 U.S. at 204–08, 102 S.Ct. 3034; *Walczak,* 142 F.3d at 119. Federal courts reviewing administrative decisions must give "due weight" to the administrative proceedings, "mindful that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* at 129 (quoting *Rowley,* 458 U.S. at 206, 208, 102 S.Ct. 3034) (alteration in original; internal quotation marks omitted).

The *Rowley* Court also held that the IDEA established a two-fold inquiry for courts reviewing administrative determinations: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Rowley,* 458 U.S. at 206–07, 102 S.Ct. 3034 (footnote omitted).

### II. Procedural Violations of the IDEA

Conducting this two-part inquiry, the District Court first held that all three challenged IEPs at issue were inadequate under the IDEA.

The first violation the Court identified was extensive delay in Rhinebeck School District's development and review of all three challenged IEPs–at least that portion of the considerable delays for which the plaintiffs were not themselves responsible. *Grim,* No. 98 Civ. 4854, slip op. at 64–67.

The Court then proceeded to identify a further violation in all three challenged IEPs, namely, their generic articulation of goals and strategies for evaluating Chelsea's progress. Specifically, the District Court held that "the rote use of [a single] phrase in practically every objective of the [1995–96] IEP is facially insufficient to meet the requirements of the IDEA." *Id.* at 71. The 1996–97 and 1997–98 IEPs, according to the District Court, "echo" and fail to solve the problems of this first IEP. *Id.* Therefore, reversing the SRO, the District Court found that, even though delay alone did not independently render the IEPs insufficient under the IDEA, *id.* at 66–67, the combination of the delay and this second violation was sufficiently serious to render all three IEPs inadequate under the IDEA. *See id.* at 66–67, 70–71.

The District Court correctly noted that the Supreme Court, interpreting the IDEA [1] in *Rowley,* emphasized the importance Congress attached to the statute's procedural requirements as "safeguards" of the rights protected by the IDEA. *See id.* at 63. Specifically, the *Rowley* Court noted that compliance with the considera-

---

1. In fact, the *Rowley* Court interpreted the Education for All Handicapped Children Act of 1975, which was subsequently amended and renamed IDEA. *Walczak,* 142 F.3d at 122. For consistency, we refer to the relevant statute as the IDEA.

ble procedural provisions of the IDEA "would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034. As the District Court recognized, however, it does not follow that every procedural error in the development of an IEP renders that IEP legally inadequate under the IDEA. *See Grim*, No. 98 Civ. 4854, slip op. at 63.

■ It is no doubt true that administrative delays, in certain circumstances, can violate the IDEA by depriving a student of his right to a "free appropriate public education." For example, if a student were actually being educated under an inappropriate IEP, and state officers failed to review it in a timely manner, the delay might constitute a violation of the IDEA. Here, however, Chelsea Grim was never in any danger of being educated under the district's proposed IEPs. The sole purpose of the various hearings was to determine, retrospectively, whether the Grims would receive reimbursement for the tuition they had paid to the Kildonan School. The challenge to the 1995–96 IEP, for example, was not made until May of 1996, a few weeks before the end of a school year Chelsea had already spent at Kildonan. Considering the circumstances, we do not see how Chelsea's right to a free appropriate public education was endangered by delays in the state's administrative review process.

It is not clear from the District Court's opinion whether the Court would have considered the IEPs' inadequate articulation of objectives violative of the IDEA if their inadequacy had not been compounded by delay. However, having reversed the District Court's holding on the legal effect of delay, it is sufficient for our purposes to note that, whether a procedural or a substantive issue, the sufficiency of goals and strategies in an IEP is precisely the type

of issue upon which the IDEA requires deference to the expertise of the administrative decisions. Accordingly, the analysis below, based upon the *Rowley* standard, applies equally to this flaw, which the District Court identified as "procedural," as to the flaws the Court deemed "substantive."

### III. Substantive Violations of the IDEA

In addition to the procedural defects the District Court identified with respect to all three of the IEPs in question, the District Court identified substantive violations of the IDEA in the 1996–97 and 1997–98 IEPs, finding that "neither ... IEP was reasonably calculated to provide educational benefit" to Chelsea. *Id.* at 81. According to the Court, the 1996–97 IEP was substantively inadequate because it did not sufficiently augment the services provided by the 1995–96 IEP in response to test scores that revealed that the student failed to progress during preceding year. *Id.* at 77. Additionally, both the 1996–97 and 1997–98 IEPs were substantively inadequate because, according to the District Court, "at the second [IHO] hearing," which reviewed both these later IEPs, "the testimony only support[ed] the conclusion that the Orton–Gillingham approach was the appropriate approach for teaching Chelsea." *Id.* at 78.

In *Rowley*, the Supreme Court overturned the reversal of an administrative decision under the IDEA, holding that the reviewing court had impermissibly "impos[ed its] view of preferable educational methods upon the States," by accepting the testimony of experts as to "the best method for educating the deaf." *Rowley*, 458 U.S. at 207 & n. 29, 102 S.Ct. 3034. The Supreme Court noted that adopting the expert opinion was inappropriate for a court reviewing administrative determinations under the IDEA, because the optimal

method for deaf education was "a question long debated among scholars," and the same expert evidence had been presented to, and found insufficient by, the SRO. *Id.*

Our Court applied the *Rowley* standard in *Walczak*, in which we overturned a District Court's reversal of an SRO's decision under the IDEA. In *Walczak* we noted that, in order for the District Court to conduct an "independent review" of the sufficiency of an IEP under the IDEA that did not "impermissibly meddl[e] in state educational methodology," it must examine the record for "any objective evidence indicating whether the child is likely to make progress or regress under the proposed plan." *Walczak*, 142 F.3d at 130 (citing *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1121 (2d Cir.1997) (citing *Rowley*, 458 U.S. at 203, 102 S.Ct. 3034)). The *Walczak* Court noted that such "objective evidence" is most easily interpreted in the form of grades in mainstream classes, but "test scores and similar objective criteria" could also be considered. *Id.*

█ Despite the District Court's protest that its holding did not violate *Rowley* by "imposing [its] view of preferable education methods upon the States," *Grim*, No. 98 Civ. 4854, slip op. at 81 (quoting *Rowley*, 458 U.S. at 207, 102 S.Ct. 3034) (internal quotation marks omitted)), the Court's judgment reflects precisely the type of subjective credibility assessment that the *Rowley* Court found inappropriate. The District Court concluded that Chelsea must be educated using a single educational methodology in a fully segregated environment in order to receive the "educational benefit" sufficient to meet the "basic floor of opportunity," *Rowley*, 458 U.S. at 201, 102 S.Ct. 3034, guaranteed by the IDEA. The Court reached this conclusion despite contrary holdings of the IHOs and SRO, and despite the IDEA's preference for educating students in the least

restrictive environment possible. It justified its conclusion by finding that "[n]either the IHO nor the SRO [reviewing the two later IEPs] gave appropriate consideration to the experts on dyslexia, who had personal knowledge of the student in question." *Grim*, No. 98 Civ. 4854, slip op. at 81. The District Court thus impermissibly chose between the views of conflicting experts on a controversial issue of educational policy–effective methods of educating dyslexic students–in direct contradiction of the opinions of state administrative officers who had heard the same evidence, as prohibited by *Rowley*. *See Rowley* 458 U.S. at 207 & n. 29, 102 S.Ct. 3034.

For the above reasons, we hold that the District Court misapplied the standard of review applicable in IDEA cases by not according appropriate deference to administrative determinations under the IDEA when it concluded that the 1995–96, 1996–97 and 1997–98 IEPs were inadequate under the IDEA.

\* \* \* \* \* \*

In sum, we reverse the judgment of the District Court because it is based on a misapplication of the standard of review under the IDEA; because it improperly held that the 1995–96, 1996–97, and 1997–98 IEPs were procedurally inadequate under the IDEA; and because it erroneously held that the 1996–97 and 1997–98 IEPs were substantively inadequate under the IDEA. We therefore enter judgment in favor of the defendants, affirming the SRO decisions denying plaintiffs private-school tuition reimbursement for the 1995–96, 1996–97 and 1997–98 school years.

For the reasons stated above, the judgment of the District Court is REVERSED.